**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
COSA INSTRUMENT CORPORATION,
XENTAUR CORPORATION,　　　　　　　　　　**ORDER**
　　　　　　　　　　　　　　　　　　　　　09-CV-175 (ADS)(ARL)

　　　　　　　　　　Plaintiffs,

　　　　-against-

HOBRÉ INSTRUMENTS BV,

　　　　　　　　　　Defendant.
---------------------------------------------------------X

**APPEARANCES:**

**Kilpatrick Stockton LLP**
Attorneys for the Plaintiffs
31 West 52nd Street, 14th Floor
New York, NY 10019
　　By: Marc A. Lieberstein, Esq.
　　　　Andrew Isaac Gerber, Esq., Of Counsel

**Fenwick & West LLP**
Attorneys for the Defendant
555 California Street, 12th Floor
San Francisco, CA 94104
　　By: Kathryn Jean Fritz, Esq., Of Counsel

**SPATT, District Judge.**

　　On February 24, 2010, following a default by the Defendant Hobré

Instruments BV ("Hobré"), United States Magistrate Judge Arlene R. Lindsay issued a

Report and Recommendation finding that Cosa Instrument Corporation ("Cosa") and

Xentaur Corporation ("Xentaur") (collectively "the Plaintiffs") were not entitled to the

declaratory and injunctive relief or the attorneys' fees that they requested in connection with Hobré's default. Presently before the Court is the Plaintiffs' appeal of that Report. For the reasons set forth below, Judge Lindsay's Report is affirmed in part and reversed in part.

## I. BACKGROUND

### A. The Plaintiffs' Allegations

The Plaintiffs manufacture and service calorimeters, devices used to measure the energy content of a gaseous stream. Beginning in 2001, Cosa purchased from Hobré component parts that Cosa modified and used to construct a calorimeter product called COSA 9600. After a dispute with Hobré, Cosa decided to purchase the component parts from Xentaur in order to develop and market a new calorimeter under the COSA 9600 brand name.

In a letter to Cosa, dated October 8, 2008, Hobré's Chief Executive Officer Jeannot Kok claimed that in producing the COSA 9600, Cosa was exploiting confidential proprietary information that it had obtained from Hobré during the course of the companies' business relationship. Kok pointedly asserted that Cosa was infringing Hobré's various intellectual property rights because the COSA 9600 was "identical" to a calorimeter produced by Hobré. Pls. Complaint Ex. C. Kok warned that "[u]nless Cosa acknowledges within a reasonable period of ten business days . . . that it will cease the production of the COSA 9600 . . . Hobré will seek legal remedies

2

for infringement of its (intellectual) property rights." Id. In closing the letter, Kok noted that Hobré had already taken the step of notifying its attorneys about the matter.

Cosa's President, Christoph Mueller, responded to Kok's letter on November 13, 2008. In his letter, Mueller denied Kok's allegations and insisted that Hobré stop making damaging statements about Cosa to its customers. On December 18, 2008, Hobré's counsel, Kathryn J. Fritz, sent Mueller a letter designed to "apprise Cosa of its violations and to provide it an opportunity to address its wrongdoing." Pls. Com. Ex. C.

Fritz claimed that "at the very least," Cosa had engaged in unfair competition, trademark and trade dress infringement, and copyright infringement. Id. In addition, the letter demanded that Cosa: (1) cease manufacturing, marketing or distributing the COSA 9600 in the United States and around the world; (2) cease all use of Hobré's trademarks; (3) immediately return to Hobré all of Hobré's confidential and proprietary information; and (4) provide Hobré with an accounting of all sales of the COSA 9600. Id. Fritz requested that Cosa notify Hobré of whether it intended to comply with these demands by December 30, 2008 and threatened that anything but full compliance would leave Hobré with "no option but to take all steps necessary to protect its rights." Id. Fritz closed the letter by requesting that Cosa and Xentaur impose a litigation hold on any documents or materials relevant to the parties' dispute. Id.

**B. Procedural History**

On January 15, 2009, after settlement discussions broke down, the Plaintiffs commenced this lawsuit seeking a declaratory judgment that: (1) Hobré has no rights in the COSA 9600 trade dress, trademark, or copyright; (2) the COSA 9600 does not infringe upon Hobré's trade dress, trademarks, or copyrights; (3) Cosa has not engaged in unfair competition through the sale of the COSA 9600; and (4) Cosa did not misappropriate Hobré's trade secrets in developing and selling the COSA 9600. In addition to requesting an order enjoining Hobré from challenging their right to sell the COSA 9600, the Plaintiffs sought attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a)(3), and the Copyright Act, 17 U.S.C. § 505.

By May of 2009, it became clear that the parties could not reach a settlement. At this point, the Plaintiffs requested that Hobré, a Netherlands-based company, allow their American counsel to accept service of the Complaint in order to avoid the costly process of serving a foreign corporation. On June 2, 2009, Hobré advised Andrew I. Gerber, the Plaintiffs' counsel, that it would not allow its American counsel to accept service of the Complaint. On June 30, 2009, Hobré was served at their listed business address in the Netherlands.

Hobré never answered the Complaint. On July 24, 2009, Cosa moved for a default judgment. In an order dated August 28, 2009, the Court entered a default against Hobré and referred the matter to Judge Lindsay for the purpose of conducting

an inquest as to damages. On January 7, 2010, Judge Lindsay issued an order deferring the damages inquest in order to give Hobré an opportunity to respond to the Plaintiffs' requests for relief.

On February 11, 2010, Hobré filed a "Memorandum of Law in Opposition to Plaintiffs' Motion for a Default Judgment". See Docket Entry 21. The memorandum of law was accompanied by a declaration from Kok in which he explained Hobré's default:

> [d]ue to the expense of pursuing a lawsuit in the United States, and due to the fact that Hobré had developed its next generation of calorimeters, we decided to let our products battle in the competitive marketplace. After negotiations broke off in spring 2009, Hobré took no affirmative legal steps against Cosa.

Kok Decl. ¶ 10.

**C. Judge Lindsay's Report and Recommendation**

Judge Lindsay recognized that by its default Hobré is "deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability." Report at 2 (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). She questioned, however, whether the Plaintiffs' allegations gave rise to the declaratory and injunctive relief sought in the Complaint. Report at 3-4. To answer this question, Judge Lindsay turned to the Declaratory Judgment Act. 28 U.S.C. § 2201. Report at 4.

Judge Lindsay observed that in deciding whether to grant a declaratory judgment, courts should analyze, among other questions "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved" and "whether a judgment would finalize the controversy and offer relief from uncertainty." Report at 4 (citations omitted). With these considerations in mind, Judge Lindsay determined that "[i]n light of Hobré's undisputed claim that it will not pursue legal recourse against plaintiffs over the [the COSA 9600] products, plaintiffs have failed to show that there is an actual controversy for the Court to resolve." Report at 5. Judge Lindsay's conclusion rested on two related findings.

First, she noted that the "sole basis for plaintiffs' request for relief are two cease-and-desist letters sent by Hobré and its counsel in October and December 2008 . . ." Id. Second, she read Kok's declaration as an assurance that Hobré will not pursue legal remedies against Cosa in connection with the COSA 9600. Id. Judge Lindsay reasoned that, under the circumstances, no "useful purpose" would be served in entering the Plaintiffs' proposed declaratory relief. Id.

Judge Lindsay also found that the breadth of the Plaintiffs' proposed injunction suggested that the Plaintiffs sought to use the "proceeding to gain a competitive advantage over future products not at issue" in this case. Report at 6. Judge Lindsay further observed that in "broadly enjoin[ing] Hobré from challenging plaintiffs' rights to sell *any products*," the plaintiffs' default judgment violated "the equitable principle

6

that a declaratory judgment should clarify and settle only issues before the court, and that injunctive relief should be narrowly tailored to fit specific legal violations." Id. (emphasis added).

Turning to the Plaintiffs' request for attorneys' fees, Judge Lindsay found that Cosa failed to present any evidence of bad faith, unreasonableness, or frivolousness on the part of Hobré that would justify an award of attorneys' fees under either the Lanham Act or the Copyright Act. Report at 6-7. In addition, Judge Lindsay noted that the amount in fees sought was not "presumptively reasonable" given her "recommendation that no relief be afforded to plaintiffs." Report at 7 (citing Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009)).

On March 10, 2010, the Plaintiffs filed timely objections to Judge Lindsay's Report. To date, Hobré has not filed papers in opposition to Cosa's objections.

## II. DISCUSSION

### A. Standard of Review

A district court must conduct a de novo review of those portions of a Magistrate Judge's recommendations to which timely objections are made. 28 U.S.C. § 636(b)(1)(C). In conducting this review, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

7

**B. The Plaintiffs' Objections**

The Plaintiffs contend that Judge Lindsay erred in finding that: (1) there was no actual controversy that would justify declaratory relief; (2) the scope of their request for injunctive relief was overly broad; and (3) they were not entitled to attorneys' fees. The Court will address each of these objections in turn.

**1. Declaratory Relief**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy," a federal court "may declare the rights . . . of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Courts in the Second Circuit apply a two-pronged test to determine whether an actual controversy exists in a declaratory judgment action involving trademarks and copyrights. Starter Corporation. v. Converse, Inc., 84 F.3d 592, 595 (2d Cir. 1996); see Matthew Bender & Co., Inc. v. West Publ'g Co., No. 94 Civ. 0589, 95 Civ. 4496, 1996 WL 223917, at *1 (S.D.N.Y. May 2, 1996) (quoting BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir.1993)) (noting that this two-part test is also applied in the context of patent and copyright disputes). "First, the defendant's conduct must have 'created a real and reasonable apprehension of liability on the part of the plaintiff.'" Ritz Hotel, Ltd. v. Shen Mfg. Co., 384 F. Supp. 2d 678, 682 (S.D.N.Y. 2005) (quoting Starter, 84 F.3d at 595). "Second, the plaintiff must have 'engaged in a course of conduct which has brought it into adversarial conflict with the defendant.'" Id. (quoting Starter, 84 F.3d

at 595). "Both elements must exist at the time the declaratory judgment action is filed." Id. (citations omitted). If the Court finds that an actual controversy exists, then it *may* exercise declaratory judgment jurisdiction. Starter, 84 F.3d at 595. Applying the Starter test to the facts of this case, the Court finds that an actual controversy exists.

First, the two letters sent by Hobré—one from Kok and the other from Hobré's counsel—unambiguously communicated Hobré's intent to bring an infringement suit if Cosa continued to sell the COSA 9600. Kok's letter warned that "[u]nless Cosa acknowledges within a reasonable period of ten business days . . . that it will cease the production of the COSA 9600 . . . Hobré will seek legal remedies for infringement of its (intellectual) property rights." Pls. Com. Ex. C. Fritz's letter accused Cosa of trade dress, trademark, and copyright infringement and threatened that Cosa's failure to comply with Hobré's demands would leave Hobré with "no option but to take all steps necessary to protect its rights." Id. Fritz's letter also requested that the Plaintiffs issue a litigation hold on any documents or materials relevant to the parties' dispute. Id. In light of these cease-and-desist letters, it is beyond serious dispute that Hobré's conduct created a "real and reasonable apprehension of liability" on the part of the Plaintiffs. Ritz Hotel, 384 F. Supp. 2d at 682 (quoting Starter, 84 F.3d at 595).

Second, the Plaintiffs clearly "engaged in a course of conduct" that "brought it into adversarial conflict" with Hobré. Id. (quoting Starter, 84 F.3d at 595). In the

Second Circuit, this prong is satisfied "where a party has engaged in a course of conduct evidencing a 'definite intent and apparent ability to commence use'" of the allegedly infringing mark. Starter, 84 F.3d at 595-96 (quoting Golden Gulf Corp. v. Jordache Enter., Inc., 896 F. Supp. 337, 340 (S.D.N.Y. 1995)). Here, not only were the Plaintiffs manufacturing and selling the COSA 9600 at the time the complaint was filed, they continue to do so today. On these facts, the Court finds that an actual controversy existed between the parties at the time the action was filed. Having concluded that subject matter jurisdiction exists, the Court must decide whether to exercise its discretion to grant Plaintiffs the declaratory relief that they have requested. Starter, 84 F.3d at 597.

Courts have interpreted the permissive language in the Declaratory Judgment Act "as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action they would otherwise be empowered to hear." Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003) (citing Wilton v. Seven Falls Co., 515 U.S. 277, 282-83, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995), and Public Serv. Comm'n of Utah v. Wycoff, 344 U.S. 237, 241, 73 S. Ct. 236, 97 L. Ed. 291 (1952)). However, although "it is true that a district court's determination whether to exercise declaratory jurisdiction is denominated as discretionary . . . a district court is *required* to entertain a declaratory judgment action '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it

will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" <u>Starter</u>, 84 F.3d at 597 (quoting <u>Continental Cas. Co. v. Coastal Sav. Bank</u>, 977 F.2d 734, 736 (2d. Cir. 1992)) (internal citation omitted) (emphasis added).

Here, Judge Lindsay found that no useful purpose would be served in granting the Plaintiffs' request for declaratory relief because she was apparently convinced that Hobré no longer intended to pursue an infringement action against the Plaintiffs. However, it is important to emphasize that Kok's declaration only states that "[a]fter negotiations broke off in spring 2009, Hobré took no affirmative legal steps against Cosa." Kok Decl. ¶ 10. Kok did not address the Plaintiffs' legitimate concern that at some point in the not too distant future, Hobré may reconsider its legal options with respect to Cosa's continued sale of the COSA 9600. In the Court's view, a declaratory judgment will definitively establish Cosa's rights to market and sell the COSA 9600 and resolve any uncertainty about which party holds the intellectual property rights to this product.

By making overt threats of litigation, Hobré caused the Plaintiffs, two of its competitors, to spend thousands of dollars in legal fees in connection with their request for a declaratory judgment. Hobré may not now escape a declaratory judgment by claiming that, at least for the time being, it has decided not to pursue

legal remedies against the Plaintiffs.  Accordingly, the Court finds that the Plaintiffs are entitled to the requested declaratory relief.

   **2. Injunctive Relief**

The Plaintiffs have requested that the Court enjoin Hobré from: "[c]hallenging Plaintiffs' rights to manufacture, supply, service, sell, [and] distribute their [COSA 9600 products] and components in the United States, or interfering in any manner with Plaintiffs' marketing and sale of its products in the United States."  Pls. Proposed Default Judgment.  Judge Lindsay found that in "broadly enjoin[ing] Hobré from challenging plaintiffs' rights to sell *any products*," the Plaintiffs' default judgment violated "the equitable principle that a declaratory judgment should clarify and settle only issues before the court, and that injunctive relief should be narrowly tailored to fit specific legal violations."  Report at 6 (emphasis added).  The Court shares Judge Lindsay's concerns about the breadth of the proposed injunction but believes that it can easily be narrowed in scope to appropriately achieve the injunctive relief to which the Plaintiffs are entitled.

   In the Court's view, the injunction should enjoin Hobré from: challenging Plaintiffs' rights to manufacture, supply, service, sell, and distribute their COSA 9600 products and components in the United States, or interfering in any manner with Plaintiffs' marketing and sale of *its COSA 9600 products* in the United States.  This revised, narrowly tailored language would make it crystal clear that the injunction is

12

not aimed at safeguarding other products not at issue in this case. Accordingly, upon receipt from the Plaintiffs of a revised default judgment that conforms to the Court's instruction, the Court will grant their motion for injunctive relief.

### 3. Attorneys' Fees

Attorneys' fees should be awarded under the Lanham Act only in "'exceptional cases,' 15 U.S.C. § 1117(a), and only 'on evidence of fraud or bad faith.'" Gordon and Breach Sci. Publishers S.A. v. Am. Instit. of Physics, 166 F.3d 438, 439 (2d Cir. (1999) (quoting Twin Peaks Productions, Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1383 (2d Cir. 1993)). The Copyright Act, 17 U.S.C. § 505, vests courts with the discretion to award attorneys' fees to prevailing parties. Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc., 290 F.3d 98, 117 (2d Cir. 2002). Although there is no precise formula for determining when attorneys' fees are appropriate under the Copyright Act, the Supreme Court has observed that the non-prevailing party's degree of frivolousness and unreasonableness should be considered. Fogerty v. Fantasy, Inc., 510 U.S. 517, 535 n.19, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) (citing Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986)). Here, the Court agrees with Judge Lindsay's determination that the Plaintiffs have failed to show that Hobré acted with a degree of bad faith, frivolousness, or unreasonableness that would justify an award of attorneys' fees under either the Lanham Act or the Copyright Act.

In support of their application for attorneys' fees, the Plaintiffs claim that Hobré never intended to litigate this matter and that Hobré has now conceded that its claims were baseless. The Plaintiffs further claim that Hobré's refusal to permit its American counsel to accept service of the Complaint on the company's behalf reflects bad faith.

The Court notes that nowhere in Kok's declaration does he concede that Hobré's claims are baseless. Nor does Kok admit that Hobré *never* intended to litigate this matter. Instead, the record before the Court reflects that Hobré threatened the Plaintiffs with a lawsuit and thought better of it at a certain point after weighing the costs and benefits of litigation. The fact that Hobré required the Plaintiffs to effect service in the Netherlands also does not give rise to an inference that Hobré was acting frivolously, unreasonably, or in bad faith. Accordingly, the Plaintiffs' request for attorneys' fees is denied.

### III. CONCLUSION

Judge Lindsay's February 24, 2010 Report is affirmed in part and reversed in part. The Plaintiffs' requests for declaratory and injunctive relief are granted. However, the Plaintiffs' request for attorneys' fees is denied.

The Plaintiffs are directed to submit a revised default judgment consistent with the terms of this opinion within ten days of the date of this order.

**SO ORDERED**.

Dated: Central Islip, New York
March 26, 2010

                                                            */s/ Arthur D. Spatt*
                                                            ARTHUR D. SPATT
                                                         United States District Judge